## WOODMAN *v.* NOTTINGHAM.

The want of a sufficient railing upon the sides of a bridge or public highway, when necessary for the security of the traveller, constitutes a legal defect, for which towns in case of accident will be held liable.

Under our statute on this subject, damages are recoverable for the probable proximate or direct consequences of such defect, where a party has suffered either injury to his person or loss of personal property.

The measure of damages in such cases, will be full indemnity for any and all injuries, occasioned thereby, either to the person or the loss of clothing, or money in the pockets of the person at the time of the accident, as well as the team, which embraces the animals, carriage, or load thereon.

The statute, regulating this subject, does not contemplate exemplary or vindictive damages to the suffering party.

A bailee, having a special property in the property injured, or money lost, may recover for the whole value of the property, he holding the value beyond his own interest *in trust* for the general owner, and the judgment recovered by the bailee may be pleaded in bar to any action, that might afterwards be brought by the general owner for the same property.

CASE, by Ira H. Woodman against town of Nottingham, to recover damages for injuries received in consequence of a defect in a highway in said town. Plaintiff set forth in his declaration that he was injured in his person and in his apparel; that his horses, harnesses and wagon were damaged; and that in being thrown from the wagon into a brook at the time of the injury, he lost over five hundred dollars in money that was in his pocket, which was never recovered. Defendant objected that plaintiff could not recover for any money he might have lost in this action, and objected to all evidence tending to show the loss of the money. But the court admitted the testimony, and instructed the jury, that, if they should find that the plaintiff was entitled to recover anything against the town, they might allow him damages for the amount of money he lost, if the loss was caused by the defect in the highway. To all which the defendant excepted. It appeared that the horses, harnesses and wagon, which the plaintiff was using at the time of the accident and which were injured, belonged to plaintiff's uncle, who purchased and paid for the same two years before, and let the plaintiff have them to use as long as he might wish to use them, and that when done with them, plaintiff was to return them in as good condition as when received; ordinary wear and depreciation excepted. While the plaintiff was thus using this property it was injured, and defendant objected that upon these facts plaintiff could not recover in this suit for any injury to this property; but the court admitted the evidence and instructed the jury that if the plaintiff was entitled to recover anything against the town, they might allow him damages for the full amount of injury done to the horses, harnesses and wagon. To which defendant

excepted. There was evidence tending to show that some $494 of the money which plaintiff claimed to have lost, had been paid to him the day before, for third persons, but the evidence also tended to show that he was a common carrier and received this money as such; or that he was the authorized agent of the parties to whom the money was due to receive it for them, and that this fact was known to those who paid him the money. The court instructed the jury that if they found the defendant liable for any of the money, they might give damages for the whole amount he lost. To which instructions defendant excepted.

M. C. Tuttle was a witness for the defendant, who saw the money in the plaintiff's pocket-book, just before the accident, and when asked on cross-examination, how much money he thought there was of it, judging from the size of the pile, he said there might have been $150 or $200 of it. For the purpose of contradicting this witness, the plaintiff introduced a witness who was allowed to testify, subject to defendant's exception, that said Tuttle on a certain occasion, said to him, that judging from the pile of money which plaintiff had on the occasion referred to, there must have been as much as $500 of it, if he had no bill larger than a $5 bill.

The court instructed the jury that they might give exemplary damages, if in their judgment the circumstances warranted it. To which defendant excepted. The defect in the highway complained of, was the want of a railing on the side of a bridge, which crossed said highway, in consequence of which, it was alleged, that plaintiff, who was crossing said bridge in the night, ran off the side of the bridge and was injured. Evidence as to the darkness of the night, was conflicting.

The defendant requested the court to instruct the jury, that if the night was so dark that the plaintiff could not see the road, and he was driving without a light, or other means of distinguishing the road, he was not in the exercise of due care and caution. *Also,* that if the plaintiff knew of the defect in the bridge, it was negligence in him to attempt to cross it in the night, when it was so dark that he could not see the way. *Also,* that a party driving a horse team upon a highway when it is so dark he cannot see the way, does so at his peril, unless he provides himself with a light or some means of distinguishing the road. Also, that towns are not bound by law to construct their highways in such a manner as to be safe for persons to drive horse teams thereon, without a light or some means of distinguishing the way, when it is so dark that they cannot see the road. Which the court declined to do, and defendant excepted.

It appeared that the plaintiff was well acquainted with the road and bridge at the place of the accident, and had driven the same team over this road some four times a week for one or two years before the accident.

And the court instructed the jury that the question was, whether or not the plaintiff was in the exercise of ordinary care and prudence in driving over the bridge, under all the circumstances of the case; that

if the night was so dark that a reasonably prudent man would not have undertaken to go over the bridge without a light, he being as well acquainted with the condition of the road and the bridge, as the plaintiff was, then the plaintiff would be in fault, and could not recover.    But, if they should find that the plaintiff was, considering the darkness of the night, and his acquaintance with the way and all the attendant circumstances, in the exercise of ordinary care and caution, and his injuries and damages were caused by a defect in the highway, then the plaintiff might recover.

The court also requested the jury if they found tor the plaintiff, to state the several items, of which their general verdict should be made up.    The jury returned a verdict for plaintiff for $678, which they certified was made up as follows:

| | |
|---|---:|
| For damages in plaintiff's person and clothing, | $13 00 |
| For damages, to horses, harnesses and wagon, | 60 00 |
| For whole amount of money lost, | 505 00 |
| For exemplary damages, | 100 00 |
| | $678 00 |

Which verdict the defendant moves to set aside.

The questions of law were reserved.

*Small & Wiggin*, for defendant.

1. The liability of the defendant is created solely by statute. *Eastman* v. *Meredith*, 36 N. H. 284; *Otis* v. *Strafford*, 10 N. H. 352; *Farnum* v. *Concord*, 2 N. H. 392; *Griffin* v. *Sanbornton*, 44 N. H. 246; *Mower* v. *Leicester*, 9 Mass. 250; *Harwood* v. *The City of Lowell*, 4 Cush. 310.

They critically examined the meaning and construction of the statute law on this subject, and quoted in argument: Chap. 69 § 1; *Burnham* v. *Stevens*, 33 N. H. 247; *Ball* v. *Winchester*, 32 N. H. 435.

They contended that the statute should be confined to the recovery of damages for *personal bodily injuries* only and while the statute specifies *team* or *carriage*, towns should not be held liable for damages to other property not named.    Therefore, there should be no recovery for the *money* which plaintiff lost.    In support of this position, quoted: 1 Kent Com. 462; *Wood* v. *Adams*, 35 N. H. 32; *Harwood* v. *Lowell, ante; Ball* v. *Winchester, ante.*

2. Upon the question of bailment, the counsel referred to *Squire* v. *Hollenbach*, 9 Pick. 552, and to *Caswell* v. *Howard*, 16 Pick. 562, and to *Brown* v. *Waterman*, 10 Cush. 117.

3. That the rule, that allowed the jury to give *exemplary* damages, by way of *punishment* or *example*, could not be supported by sound legal principle, and does not in its practical operation promote justice.    It practically gives the jury a license to mulct the defendant in damages to any extent, whenever the circumstances of the case are such as to excite sympathy for the plaintiff or prejudice

against the defendant. The right of the plaintiff in civil suits for a tort, is to recover *compensation* for the *injury* he has suffered. If his injury is aggravated by the criminal act or neglect of the defendant, that should be considered in estimating the plaintiff's actual damage, but damages awarded not to compensate for the injury, but by way of example are awarded really as a punishment for a wrong to the *public*, for what is, or should be, if the verdict be a just one, punishable as a crime. On this point the case *Austin & ux.* v. *Wilson & ux.* is quoted, 4 Cush. 272. The language of our statute on this subject did not admit of such a construction as would render a town liable for exemplary damages. The cases *Whipple* v. *Walpole*, 10 N. H. 130, and *Wheeler* v. *Troy*, 20 N. H. 77 were commented on as unsound.

*Hatch*, for plaintiff.

I. The statute includes and justifies the recovery of all the damages claimed by the plaintiff. 1. This is the natural and reasonable construction of the words of the statute. "Damage which shall happen to any person" includes all injuries to property. The words "team or carriage" are inartificially used to explain and specify some of the damages, but not to limit the preceeding words. The word "person" of itself, may fairly include all that is on the person. The word "carriage" means all that is carried, whether upon a vehicle, horse or the person. *Connery* v. *Jefferson*, 46 N. H. 521. 2. This construction has long been received and acted upon without question, throughout the state. *Wheeler* v. *Troy*, 20 N. H. 77; *Elliot* v. *Concord*, 27 N. H. 204; *Corey* v. *Bath*, 35 N. H. 530.

It is plain from the cases above cited, as well as from the peculiarities of the provincial act of 1719, and from the language of the existing statute "towns *are* liable," that the duty of towns to repair highways, and their responsibility for damages arising from their insufficiency, is part of the common law of the state, which the statutes regulate but do not create. But this is immaterial. The remedy for neglect of a plain public duty should be construed favorably and broadly, whether it comes by statute, or common usage. 3. The special finding of the jury settles the fact that the loss of the money was a direct result of the accident, and not "consequential." It does not differ from the case of a wagon which has fallen into a stream and sunk or floated away.

II. The property of plaintiff in the horses, &c., was sufficient to entitle him to recover of defendant, the full value of them. Defendants stand as a wrong doer by reason of their neglect; and the ordinary rule applies that possession of the chattels is sufficient to entitle him to recover. Sedgw. on Dam. 569; *Littlefield* v. *Biddeford*, 29 Maine 320: *Barron* v. *Cobleigh*, 11 N. H. 560; 2 Green. Ev. sec. 618, 614.

The question whether plaintiff would be liable to the owner of the horse, &c., is not material. He is bound, morally and honor-

ably, to restore the property or recompense the owner. Defendant is not entitled to compel him to stand on any of the *apices juris* in his dealings with his benefactor. The money was clearly his own upon the case stated.

III. It is settled in this state that exemplary damages may be given in a case like this. *Whipple* v. *Walpole*, 10 N. H. 130, cited with approval in *Wheeler* v. *Troy*, 20 N. H. 77; Sedgw. on Dam. 460. The reasoning to the contrary is narrow and unsatisfactory. To enforce the statute fairly, plaintiff should be allowed to recover such damages "as plaintiff ought to receive and defendant ought to pay." *Knight* v. *Foster*, 39 N. H. 582.

All the reasons for allowing exemplary damages, apply to this case. Sedgw. on Dam. 454 *et sub.*

It is no answer to say that towns may be indicted for defective highways. So may malicious trespassers and libellers, yet exemplary damages are allowed against them. In practice indictments are used only to raise means to repair highways, not to punish neglect to repair them. Our provincial statute of 1719, *Laws* 154, *sec.* 6, which recognizes the liability of towns to indictment for defective highways, also gives *double* (or exemplary) damages to the party injured.

NESMITH, J. Under section one of chapter sixty-nine of the General Statutes now in force in this state, "towns are made liable for damages, happening to any person, his team or carriage, traveling upon a highway, or bridge thereon, by reason of any obstruction, defect, insufficiency or want of repair, which renders it unsuitable for the travel thereon." It will be seen, that this section is made to differ slightly from the first section of chapter thirty-seven of the Revised Statutes. The words, "*special damage*," are exchanged for the more comprehensive and general term "damages" implying any and all damages, whether specially set forth in the plaintiffs declaration or not. Then the word "defect" is for the first time introduced into the present Statute, a word, that gives emphasis, and additional strength and meaning to the language of the old statute, viz : "*obstruction, insufficiency, or want of repair.*" The word *traveling upon* a highway or bridge," appear to be used here for the purpose of showing, that it was the object of this section of the law to give a remedy to the *person honestly and properly using* the highway or bridge, which the town was bound to maintain and keep in suitable repair.

The defendant's counsel, and his elaborate brief in this case, contends that the court should give a more limited or restrictive construction to the aforesaid statute, than it has usually received from the courts in this state.

Our decisions in cases like this in this state, have sustained the rule of giving indemnity for injuries to property, as well as to the person. We have interpreted the word *damages* to mean here a compensation, recompense, or satisfaction to a party plaintiff for an in-

jury actual received by him from the defendant and precisely commenscrate with the injury, whether it be to his person, or estate, 2 Greenleaf's Evd. §253.

The plaintiff first proving the defendant to be in fault, or a wrong doer, then it legitimately follows that it should be held liable for the natural, proximate, and direct consequences of its default. *Butler* v. *Kent*, 19 Johnson, 223 ; The default on the part of the defendant in this case was a failure to provide a sufficient railing at the side of the bridge, which it was liable to maintain, and as a direct result of such negligence, this accident has happened to plaintiff. In Massachusetts it has been held, that the want of such a railing at the side of a highway, when necessary to the security of travelers, constitutes a legal deficiency *in the way* within the meaning of their statute. *Williams* v. *Clinton*, 28 Conn. 264; *Hayden* v. *Attleborough*, 7 Gray, 338.

The New Hampshire statute has received a similar construction, *Davis* v. *Hill*, 41 N. H. 329 ; *Willey* v. *Portsmouth*, 35 N. H. 303 ; *Norris* v. *Litchfield*, 36 N. H. 271.

The question of liberty in this case was properly submitted to the jury to find, and their verdict settled the fact against the defendant.

We do not understand the defendant's counsel to complain of the compensation given by the jury for the actual *bodily* injury, but, he contends against the allowance more especially for the loss of the money in the plaintiff's pocket, and which the jury have found plaintiff did lose, because such loss was the proximate, natural or direct consequence of such accident.

In our view, the fair and reasonable construction of our statute requires, or necessarily implies that the word *damage, which shall happen to any person,* includes all injury to *property* as well as person, the pecuniary loss to the pocket, as well as the bodily loss of bone, or flesh and blood.

Indemnity for *damage to the person*, therefore, includes necessarily compensation for every thing then on, about or belonging to the person, as well as for all *bodily* injuries, which are proved to be the result of the accident. The faulty negilence of the defendant in the opinion of the jury, brought actual injury to plaintiff's person at the same time, when his clothing was torn, and his money lost. The plaintiff also realizes loss and damage of his money all traceable to the same procuring cause, and without evidence of want due care on his part, and shows himself so far partly entitled to the beneficial remedy of this statute.

The law generally seeks out, and casts its burdens, or penalties upon the party, who is first and most guilty. *Culpable negligyence* is the *omission* to do something, which a reasonable and prudent man would do, or the *doing* of *something*, which such a man would not do under the circumstances surrounding each particular case, or it is the want of such care, as men of ordinary prudence would use under similar circumstances. With these views, we hold the defendant responsible equally for the loss of plaintiff's money, clothing and bodily vigor.

The defendant being found a *wrong doer*, the plaintiff may be regarded as bailee both of the horses and money, and in that capacity, holding a *special* property in such chattels, and sufficient to entitle him to recover in his name for the entire injury. A *bailee*, having a special property, may recover the whole value of the property, holding the value beyond his own interest in *trust* for the general owner, and the judgment recovered by the bailee may be pleaded in bar to any action, that might be afterwards brought by the general owner for the same property. 2 Hilliard on Torts 571; *King* v. *Dunn*, 21 Wend. 253; *Stanley* v. *Gaylord*, 1 Cush. 536; Sedgw. on Dam. 569; *Barron* v. *Cobleigh*, 11 N. H. 560; *Littlefield* v. *Biddeford*, 29 Maine 320.

It has been recently decided that the words *team* or *carriage*, as expressed in this statute, are meant to include whatever animal or animals, drew or carried the load, and their harness, also the load itself. *Connery* v. *Jefferson*, 46 N. H. 521.

We admit the principle should govern this case, that the defendant, is not liable for any injury or loss, of which a defect in the bridge is not the *proximate* or direct cause. In Vermont, it has been held, under their statute, not unlike ours in this state, that where a party in attempting to extricate his horse from a hole in a defective bridge, into which his horse had stepped, was injured by the animal; that he could recover against the town, which was bound to repair the bridge. *Stickney* v. *Maidstone*, 30 Vt. 738. So where a traveller, in the exercise of ordinary care and prudence, voluntarily leaped from his carriage, because of its near approach to a dangerous *defect* in the highway, and thereby sustained an injury— the town was held liable, although the carriage did not come in actual contact with the defect. *Lund* v. *Tyngsborough*, 11 Cush. 563. The defects in the bridge and highway were the *proximate*, not the *remote* causes of the injury or damage in these cases, no more than was the want of *railing* on the bridge, the proximate cause of the loss to the plaintiff in the case before us. Thus far, we are inclined to sustain the rulings of the court, and the special finding of the jury giving the actual damages of $578 to the plaintiff.

The court also instructed the jury, that they might give exemplary damages if in their judgment the circumstances warranted it; to which the defendant excepted, and the jury found as *exemplary damages* the sum of $100. We are aware that exemplary, or vindictive damages have, under instructions of the court, been sometimes given by juries in this class of actions against towns. In this state, the case *Whipple* v. *Walpole*, 10 N. H. 130, is referred to, as the leading authority to justify such a verdict. The facts in that case seem to have made out a case of gross negligence, therefore, the plaintiff seems to have been entitled to claim a higher *compensation*, than he would have been entitled to, had the agents of the town exercised more diligence in meeting the just claims of the plaintiff. It appears to us, the true measure of damages should be limited and measured by the *rule* to *one full, actual compensation* for the injury

received, neither more or less. Prof. Greenleaf, in his able treatise on this subject, well remarks, if the plaintiff's injury be aggravated by the criminal act, or *neglect* of the defendant, by *evidence* of recklessness, insolence, wanton, or malicious, or oppressive violence, and the like on the part of the defendant, all such conduct should be properly considered, in estimating the plaintiff's *actual* damage, and *objects* to making up a larger sum, in the form of *punitive* or *vindictive* damages. 2 Green. Ev. Note to sec. 253. Also, § 273. In a recent English case,—*Emblem* v. *Myers*, 6 Hurls. & N. 54,—Jus. Pollock, says : "I do not say that in actions for *negligence* there should be *vindictive* damages, such as are sometimes given in actions of trespass, but the *measure* of damages should be different according to the nature of the injury, and the circumstances with which it is accompanied." So in New York, in the case *Wallace* v. *Mayor*, of New York ; 2 Hilton 440.

The court there say, "that where the circumstances show there was a deliberate, preconceived, or positive *intention* to injure, or that reckless disregard of the safety of person or property, which is equally culpable, *vindictive* damages are allowable ; but in cases of *negligence, simply*, the rule is to allow *the actual damages only*. The award of *smart money* in mere cases of negligence, should not be allowed. *Moody* v. *McDonald*, 4 Cal. 297 ; *Morford* v. *Woodworth*, 7 Ind. 83 ; 14 Louis. 806.

It appears that the negligence found here is not of that aggravated character, which justifies the allowance of exemplary damages ; nor do we believe it to be necessary, or proper in actions generally against towns under our statute, to instruct the jury to allow *vindictive* damages *eo nomine;* for it cannot be presumed that towns in cases of this kind are influenced by malice when accidents of this nature occur ; and if the circumstances of any case show even gross negligence, it appears to us to be enough, for the jury in making up their verdict, to give all the actual damages the plaintiff has suffered, and no more ; nor do we think that the legislature ever contemplated anything more than a full indemnity for the injury received to the person or property, by their statute regulating this subject.

· Hence, we overrule the case, of *Whipple* v. *Walpole*, as a case of authority on this point. We infer from the fact that our present statute gives less damages, than were allowed by the provincial act on this subject; that the legislature has actually intended to restrict them to a compensation equal to the injury in all cases. The vindictive or exemplary damages, specially found by the jury will be deducted from the verdict in this case, and judgment is rendered on the verdict for the balance, as found by the jury.