ELLIOTT *v.* LISBON.            { March 21, 1876.   | 57   27 | 66   544 |

</div>

Under Gen. Stats., ch. 69, a town is liable for damage happening, by reason of an insufficient highway, to a two-year-old colt, driven with other colts along the same.

FROM GRAFTON CIRCUIT COURT.

CASE, for damages to the plaintiff's yearling or two-year-old colt, by reason of a defect in a highway of the defendant town. At the time of the accident the plaintiff was driving said colt, with two other colts, loose, in the road from his pasture to his barn, a distance of two or three miles. The defendant claims, as a matter of law, that the defendant town is not liable for damages which happened to the plaintiff's colt when being driven loose in its highways, and raises no other question.

Upon the foregoing agreed statement this case was transferred to the superior court by FOSTER, C. J., C. C.

*Bingham & Mitchell,* for the plaintiff.

*Carpenter,* for the defendants.

CUSHING, C. J. By the statute of 1786, " in case any special damage shall happen to any person, or persons, or their teams, or carriages, by means of the insufficiency," &c., damages may be recovered against the town. The statute of 1829 is almost exactly in the same words. In the Revised Statutes, ch. 57, sec. 1, the words are,—" In case any special damage shall happen to any person, or to his team, or carriage, by reason of the obstructions, insufficiency, or want of repair of any highway or bridge in any town, the person injured shall recover his damage in an action against such town."

By Gen. Stats., ch. 59, sec. 1, " Towns are liable for damages happening to any person, his team, or carriage, travelling upon a highway or bridge thereon, by reason of any obstruction, defect, insufficiency, or want of repair, which renders it unsuitable for the travel thereon."

Under these statutes, in *Eliot* v. *Concord*, 27 N. H. 204, the plaintiff was allowed to recover for expenses and loss of service occasioned to him by an injury sustained by his wife ; in *Conway* v. *Jefferson*, 46 N. H. 521, for damage done to the coal with which his sled was loaded ; in *Wheeler* v. *Troy*, 20 N. H. 77, for injury sustained by his wife and child ; in *Corey* v. *Bath*, 35 N. H. 531, for injury sustained by himself and his child.

In *Conway* v. *Jefferson*, SARGENT, J., says,—" But, upon examining chapter 57 of the Revised Statutes, and considering all its provisions, we have no doubt that the legislature intended to include in the term *team*, in the first section, the animal or animals that drew or carried the load, whether one or many, or that were driven over the highway, whether in harness or otherwise ; and, by the term *carriage*, they in-intended to include whatever carried the load, whether upon wheels or runners, and also that which was carried, whether on wheels, or runners, or on horseback. I have looked in vain for legal authorities on the use and construction of these words. But the dictionary, the only authority I have found, justifies, I think, the construction I have given them."

In *Woodman* v. *Nottingham*, 49 N. H. 387, the plaintiff was allowed to recover for money lost from his person. NESMITH, J., says, in his opinion,—" In our view, the fair and reasonable construction of our statute requires, or necessarily implies, that the words *damage which shall happen to any person* include all injury to *property* as well as person, the pecuniary loss to the pocket as well as the bodily loss of bone, or flesh and blood."

In the case of *Wheeler* v. *Troy*, 20 N. H. 76, the court held that towns in this state are liable at common law to actions for neglect of their duties in regard to highways, and that, the statutory remedy not being as extensive as the injury, the common law remedy was not taken away.

In the other cases the statutory remedy seems to have been extended, by ingenious interpretation, so as to cover the particular wrong which had to be remedied. As by Gen. Stats., ch. 69, sec. 5, it is provided that towns in certain instances shall not be liable for droves of cattle, it seems necessary to infer either that droves of cattle may be embraced in the words " person, team or carriage," or else that provision must be held to recognize the common law remedy, according to the doctrine of *Wheeler* v. *Troy*.

Either way, I think there can be no doubt, on the authorities cited, that the defendant town may be liable in this action for damage happening to the colts of the plaintiff. Of course, the question of fact, whether the plaintiff was in the lawful use of the highway as a highway, *adeundo et redeundo*, and whether he was in the exercise of sufficient care, will be open to be determined by the jury.

Ladd, J.  By Gen. Stats., ch. 69, sec. 1, towns are made liable for damages happening to any person, his team or carriage, travelling upon a highway, or bridge thereon, by reason of any obstruction, &c., thereon.  Under this statute it has been held that a recovery might be had for injury to a load of coal being drawn upon a sled—*Conway* v. *Jefferson,* 46 N. H. 521—and for money lost from the pocket of the plaintiff.  *Woodman* v. *Nottingham,* 49 N. H. 387.

Section 5 of the same chapter provides that towns are not liable for such damages happening to droves of cattle, by reason of the deficiency of a bridge, if, when it happens, the number of cattle on the bridge exceeds twenty-five.  The whole chapter is to be read and construed together, and section 5 clearly shows that the legislature understood the terms used in section 1 to be broad enough to include droves of cattle ; otherwise, that section means nothing.  It would be grossly absurd to except the single case of injury from a defective bridge when there were more than twenty-five cattle upon it, if droves of cattle did not come within section 1 at all.  I think, looking at the two sections together, we must conclude that droves of cattle are to be regarded as put within the scope of section 1 by an express legislative construction of the terms used in that section ; and it seems to me that construction is broad enough to cover the present case.  It is true, a single colt driven loose is not a drove of cattle, and I am not willing to say it is a "team," in the usual sense of that word ; but I think the exception with respect to droves of cattle shows unmistakably that the legislature understood the signification of the word to be broad enough to include an animal driven upon the road without harness.  The conclusion is almost irresistible, as is intimated in *Woodman* v. *Nottingham,* that the legislature understood the terms of section 1 to be broad enough to cover any property which is being lawfully carried, or driven, along the highway.

If it be a correct doctrine that an action may be maintained for an injury caused by failure to perform a duty imposed by statute, or by negligence in the performance of such duty, the same as in case of a duty imposed by the common law, then, of course, it is not very material whether the statute fairly bears the construction we have put upon it or not.

Smith, J.  Counsel for the defendant, in argument, claimed that the construction given to the word " team " in *Conway* v. *Jefferson* was only a *dictum,* not called for in the consideration of the question then before the court.  Be it so ;—what then did the legislature mean by that term as found in the statute ?

By the original Provincial Statute, passed in 1719, ch. 98, sec. 6, it was enacted that if through neglect in keeping in repair any highway, any person was killed or injured, the parish, or town, to which he belonged should pay, &c., and should " render recompense for any carriage, cart, horse, or other beast harmed or lost, proportionable to the damage suffered."  It will not be contended that that statute was not broad enough to include a case similar to this.

By the act of 1786 (N. H. Laws of 1805, p. 332) it was enacted that " in case any special damage shall happen to any person or persons, or to his or their teams or carriages, by means of the insufficiency or want of repairs of any highways or bridges in any town or parish within this state, the party aggrieved shall recover his or their damage in any action against such town or parish." The same act appears in the edition of N. H. Laws, 1830, p. 389, and was reënacted by the legislature, July 3, 1829, in the same language (omitting the word parish). The provisions of the Rev. Stats, ch. 57, sec. 1, are substantially in the same terms.

It thus appears that for ninety years our statutes, affording a remedy to any one suffering damages to his person, team, or carriage, by reason of a defect in a highway, have remained without any substantial change. By sec. 5, Gen. Stats., ch. 69, it is provided that towns " are not liable for such damage happening to droves of cattle by reason of the deficiency of a bridge, if, when it happens, the number of cattle on the bridge exceeds twenty-five." This provision does not appear in the edition of Laws of 1830. It appears for the first time, so far as I have discovered, in the Rev. Stats. of 1842, ch. 57, sec. 5. It becomes material to inquire what was the purpose of the legislature in inserting this section in the statutes. If the term " team " was understood to include only such animals as the traveller attached to his carriage, and used to draw it over the highway, it is plain the new section is meaningless. If a town is only liable for damages to animals used to draw a carriage, why was this section added to the previous statute ? All parts of a statute are to be construed together. Examining, then, the first and fifth sections together, how can effect be given to the latter unless the former is held to include animals driven upon the highway, as well as those attached to a vehicle ? The word " cattle," in its most usual signification, means domestic quadrupeds collectively, especially those of the bovine genus,—sometimes, also, including sheep, goats, horses, mules, asses, and swine. Webster's Unabr. Dic. There is no reason to suppose the legislature intended to restrict the term to animals of the bovine genus. And if this be so, then a person may use the highways to transport his horses, in droves, from place to place, as he would his other cattle ; and section 5 being a limitation of section 1, the word *team* must be held to include animals driven over the highway, as well as animals attached to a carriage or vehicle.

The conclusion is, that this action may be maintained.

*Case discharged.*