THE CHICAGO, KANSAS & NEBRASKA RAILWAY COMPANY v. J. H. V. BROWN.

1. RAILWAY COMPANY — *Negligence, Doubtful.* The action involves the question of negligence on the part of the defendant railway company. *Held,* Doubtful as to whether any negligence is shown as against the railway company, though the question is not decided.

2. TIME-CHECKS—*Error in Admitting Parol Evidence.* The action also involves the question as to whether the defendant railway company or another railroad company is liable for the injuries complained of; and in order to prove that the defendant railway company was the party liable, the plaintiff, with the permission of the court, but over the objections and exceptions of the defendant, introduced paro evidence showing that certain "time-checks" were made out in the name of the defendant, although no evidence was introduced tending to show that these "time-checks" were lost or destroyed, or that any search had ever been made for them, or that any notice had ever been given to either of the railroad companies or to anyone else to produce them. *Held,* Error.

3. DEPOSITION, *Error to Admit.* It is error to permit the deposition of a resident of the county to be introduced in evidence over the objections of the adverse party, unless it is first shown that the witness's oral testimony cannot be procured.

4. —— *Erroneous Instruction.* An instruction which in effect makes the defendant railway company responsible for *any* negligence or mismanagement on the part of any agent or employé, while it permits the plaintiff, another employé, to recover against the railway company although he may have been guilty of *slight* negligence, is erroneous.

*Error from Pratt District Court.*

ACTION to recover for personal injuries. Judgment for plaintiff *Brown,* at the April term, 1888. The defendant *Company* brings the case here. The opinion states the facts.

*W. F. Evans,* and *J. E. Dolman,* for plaintiff in error.

*J. C. Ellis,* and *B. E. Johnson,* for defendant in error; *E. F. Hilton,* of counsel.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought before a justice of the peace of Pratt county, by J. H. V. Brown, against the Chicago, Kansas & Nebraska Railway Company, for injuries alleged to have been received by the plaintiff through the negligence of one of the employés of the railway company. At the time when the alleged injuries occurred the plaintiff was employed as a section-man under Daniel Shanahan, the

25—44 KAS.

section foreman, and the duties of both were upon what was known as the Chicago, Kansas & Nebraska Railway; but who their employer was, whether the Chicago, Kansas & Nebraska Railway Company, or the St. Joseph & Iowa Railroad Company, was and is a disputed question. The principal allegations of the plaintiff's bill of particulars were and are as follows:

"That on or about the 13th day of December, 1887, while plaintiff and the said Daniel Shanahan were engaged in operating and propelling a hand-car of defendant upon the railroad of defendant in said Pratt county, Kansas, the said Daniel Shanahan carelessly and negligently, and without the fault or negligence of the plaintiff, pushed and displaced a certain water cask, keg, or small barrel, standing upon said hand-car, so as to cause the said cask, keg, or small barrel to take a position immediately under the handle of said hand-car which plaintiff was holding and operating, so that two of the fingers of plaintiff's right hand were caught on the downward stroke of said handle, between said handle of said hand-car and the top of said cask, keg, or small barrel, and the said fingers of said plaintiff were thereby crushed, cut and lacerated, and the bone of one of said fingers fractured."

The case was taken to the district court of Pratt county, where it was tried before the court and a jury, and judgment was rendered in favor of the plaintiff and against the defendant for $109.41; and the defendant, as plaintiff in error, brings the case to this court for review.

It is certainly doubtful whether any culpable negligence was shown as against Shanahan, or as against any railroad company. If any such negligence was shown, it was shown wholly and entirely by the testimony of the plaintiff below, Brown, and wholly and entirely as against Shanahan. It appears that on the evening of December 13, 1887, at about 6 o'clock, Shanahan and Brown were returning from their work by means of a hand-car, which they themselves operated and propelled. They were moving eastwardly — Shanahan in front, and Brown in the rear. An empty water keg was standing on the car, about the middle of the car east and

west, and on the south side of the car.   Brown was well
acquainted with the work.   He had already worked upon the
railway, performing precisely the same kind of duties forty-
three days, and it was always their custom to go to and from
their work by means of a hand-car, and they always carried
a water keg with them in the manner aforesaid, full of water
in the morning and empty in the evening.   As to how the
accident occurred, with the incidents connected therewith,
Brown testified as follows:

"I, being behind, had one hand in the center; there were
three places, one in the center and one at each end, and I some-
times, in order to ease my hand, sometimes took the center
bearing.   I had to get on at the right-hand side, and I got
on at the center place, and had my left hand in the center
hole.   The keg was between me and Shanahan.   My right
hand was directly behind the keg, and the keg was directly
behind Shanahan.   That was how we propelled the hand-car.
After I had got on, and the linch-pin was found, they did not
wait for us, and the others had worked their hand-car so fast
we were losing ground, and Shanahan made an effort to pro-
pel the hand-car more rapidly, and in order to do so gave
himself a wide swing, and placed his foot on the keg.   He
was very thickly dressed — had on an overcoat; I don't know
how many shirts and pants, and thick pants over them.   In
making the effort to propel the hand-car he threw the keg,
throwing it under my handle.

.   .   .   .   .   .   .   .   .   .   .   .

" *Ques.:* Where was Mr. Shanahan with reference to the
keg?   *Ans.:* East of the keg.   Shanahan struck against it
and threw it back.

"Q. With what?   A. I think his feet, or it may be with
his leg.   He made this big swing to work faster, and pushed
against the keg both.

"Q. You think it was his feet, then?   A. His feet and
body.

.   .   .   .   .   .   .   .   .   .   .   .

"Q. Were you looking at the keg?   A. I was, sir; I saw
the keg and Shanahan too.

"Q. And Shanahan too?   A. Yes, sir; I saw Shanahan's
feet and body push the keg.

"Q. You saw it before it came under the handle?   A.
Yes, sir; I did, sir.

"Q. You saw it when it started? A. I did, sir; it did not take much time."

Brown also testified that during all the time he worked on the railway he noticed the keg; that "it was one of the things to look after; it was every man's duty to look about to watch the things on the car." He also testified as follows: "I could swear I noticed it ninety-nine hundredths of the time." Shanahan testified that he did not move the keg, nor even touch it. He did not know what moved it. Shanahan also testified that he told Brown to keep a sharp lookout for the keg, and to go from the end where he was and to the north side, and he would be all right. Brown, however, in his testimony denied all this.

Under the evidence in this case we can almost say as a matter of law, that no culpable negligence was shown as

1. Railway company—negligence, doubtful.

against any railroad company or railway company; but as the judgment of the court below must be reversed for other reasons, it is unnecessary to so decide, and we shall not do so.

It is further claimed that the court below erred in permitting Brown, over the objections and exceptions of the defendant, to testify with regard to certain "time-checks." Brown was not only a section-man, but he also acted as the clerk for the section foreman, Shanahan, keeping his books, making out time-checks, etc. One of the questions presented and litigated in the court below in this case, was whether the plaintiff was at the time of the accident working for the Chicago, Kansas & Nebraska Railway Company, or for the St. Joseph & Iowa Railroad Company; and to prove that he and all the other section-men on that railroad were working for the Chicago, Kansas & Nebraska Railway Company, he testified, over the objections and exceptions of the defendant, that all the time-checks were made out in the name of the Chicago, Kansas & Nebraska Railway Company, and this he testified to without any further foundation for the introduction of such testimony than that he did not have such time-checks in his possession or under his control. No evidence was intro-

2. Time-checks—error in admitting parol evidence. duced that they were lost or destroyed, or that any search had ever been made for them, or that any notice had been given to either of the foregoing railroad companies, or to anyone else, to produce them. We think this was error. (*Brock v. Cottingham*, 23 Kas. 383, 388, 389, and cases there cited.)

During the time while Brown worked upon the railroad, Shanahan, the section foreman, kept a book entitled "Chicago, Kansas & Nebraska Railway Company, St. Joseph & Iowa Railroad Company, lessee, time-roll," etc., in which book Brown, as Shanahan's clerk, kept the time of service of the different section-men, Brown himself making the entries therein. In all probability the time-checks were made out in the name of the same railroad company.

It is further claimed that the court below erred in permitting the deposition of John Whaley to be introduced in evidence. The objections urged against this testimony were that Whaley was in the county, and that he would have been present at the trial if he had been *subpenaed*, and that the deposition was also incompetent, irrelevant, and immaterial. The deposition itself showed that the witness was a resident of the county. We think the court below erred, but it is doubtful whether the exception to its introduction was sufficient.

3. Deposition, error to admit.

It is also claimed that the court below erred in giving the following, among other instructions, to the jury:

"Our statute provides that every railroad company organized or doing business in this state shall be liable for all damages done to any employé of such company, in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employés, to any person sustaining such damage; and if you believe, from the evidence in this case, that the injury complained of by plaintiff occurred in consequence of any negligence or mismanagement of any agent or employé of defendant, and without any greater want of carefulness on the part of plaintiff than was reasonably to be expected from a person of ordinary caution in the situation in which the plaintiff was at the time of said injury, then

your verdict should be for the plaintiff; but if you believe from the evidence that the plaintiff was, at the time of the injury, guilty of contributory negligence—in other words, that his own negligence contributed to said injury—then the plaintiff cannot recover in this action; the law, however, does not require the greatest care and caution, but only such reasonable care, such as a man of ordinary prudence would exercise under similar circumstances; and, although you may find that the plaintiff was guilty of slight negligence, yet if you believe from the evidence that there was great negligence on the part of the defendant, causing said injuries complained of, then such slight negligence on the part of the plaintiff would not defeat his right of recovery in this action."

This instruction, it will be seen, makes the railway company responsible for "*any* negligence or mismanagement of any agent or employé"; while it permits the plaintiff to recover although he may have been guilty of "*slight* negligence." It does not treat the parties alike. This is error. Each party in such cases is required to exercise ordinary care and diligence, and neither is required to exercise any greater degree of care or diligence; Shanahan was not required to exercise any greater degree of care or diligence than was Brown. If the railway company was liable because of "any negligence" on the part of Shanahan, then the plaintiff should not be allowed to recover if he himself was guilty of "any negligence," whether "slight" or otherwise; and if the plaintiff may recover and still be guilty of "slight negligence," then the defendant should not be held liable because of "slight negligence" on the part of Shanahan, which would certainly be included in "any negligence." Neither party, however, is responsible for merely "slight negligence," which means simply a want of great or extraordinary care; while both parties are responsible for ordinary negligence, which means a want of ordinary care. The word "negligence" is used in various ways. It sometimes means a failure to exercise the greatest or most extraordinary care, although the party has in fact exercised great care, and all the care required of him in the particular instance. This is

4. Erroneous instruction.

usually termed "slight negligence." It may sometimes mean the failure to exercise ordinary care, or in other words, that degree of care which an ordinarily prudent person would exercise under like circumstances, although the party has exercised some care, and it may be only slightly less than ordinary care. This is usually termed "ordinary negligence." And it may sometimes mean a failure to exercise that degree of care, whether slight, ordinary or great, which is required in the particular instance, although the party may have exercised some care, and it may be only slightly less than the degree of care required. This is termed "culpable negligence." In the present case both Brown and Shanahan were required to exercise ordinary care, and not to be guilty of ordinary negligence, and neither was bound to exercise any greater degree of care or diligence, nor responsible for any less degree of negligence. The statute relied on by the plaintiff (Gen. Stat. of 1889, ¶1251) uses the words "any negligence"; and in so using the same it undoubtedly intends *any culpable negligence*, or *any* negligence above what is permissible. Or, in other words, it means a want of that degree of care required in the particular instance. The statute is evidently based upon the theory that when a party has exercised that degree of care required in the particular instance, he is *not guilty of any negligence*, although it would be possible for him to have exercised a much greater degree of care. The statute certainly does not mean that the highest possible degree of care shall be exercised, and that the party shall be liable for the slightest possible degree of negligence, thereby treating any possible want of care, however slight, as culpable negligence. If the court below meant what we think the statute means, then we think the court below to that extent was right; but from the whole of the instruction it cannot be said that the language thereof means this, for while it is said in substance that "any negligence" will defeat the defendant, it is also said that "slight negligence" will not defeat the plaintiff, and "slight negligence" is certainly included within "any negligence." The court probably meant by the use of the words

"slight negligence," only a failure to exercise great or extra-ordinary care, but it was unfortunate that it used these words with reference to the plaintiff Brown, after using the words "any negligence" with reference to the defendant and to Shanahan, for the court should have applied precisely the same degree of negligence to all. If the court by the use of the words "any negligence," meant a degree of negligence greater than ordinary negligence, (and any other meaning than ordinary negligence would make the instruction erroneous,) then when it used the words "slight negligence," it would seem unquestionably to have meant a degree of negligence greater, though perhaps only slightly greater than ordinary negligence, which would be gross negligence, and which would make the instruction equally erroneous. But if the court by the use of the words "slight negligence" meant merely a failure to exercise great or extraordinary care, then it would seem that by the use of the words "any negligence," the court would mean a much less failure, a failure to exercise only the greatest or most extraordinary degree of care, and in that way the court would make the defendant railway company liable for the slightest and most trivial negligence, which would also make the instruction erroneous. The defendant railway company is responsible for *any culpable negligence*, but not neces-sarily so for "any negligence;" and the plaintiff would be responsible for any slight *culpable* negligence, but not neces-sarily so for any "slight negligence." But to use the words "slight negligence" and "any negligence" in the same in-struction in different senses and without any explanation, would be misleading and erroneous. With these words "any negligence" and "slight negligence" as used in the same in-struction, in this case, without any explanation as to what was meant by the words "any negligence," the instruction is certainly erroneous. As above stated, both Brown and Shan-ahan were required to exercise ordinary care, or that degree of care which an ordinarily prudent person would exercise under like circumstances, and neither was required to exercise any greater degree of care. This instruction would probably,

however, lead the jury to think that the railroad company through its agents and employés was bound to exercise the greatest possible degree of care, and was liable for the slightest possible degree of negligence, which is not a correct rule.

On the side of the plaintiff, however, it is said that this instruction was not properly excepted to. After a copy of all the instructions is given in the record numbered from 1 to 6, then the following language is used: "And the said instructions from 1 to 6 inclusive, are all the instructions given by the court to the jury in this case; . . . to the giving of which instructions numbered 1, 2, 3, 4, 5, and 6, and to each of them severally, the defendant then and there excepted." The first instruction includes what is above quoted, and the figure "I," representing its number, is placed nearly in the middle of the instruction, and not at the beginning where it should be placed, and what we have quoted comes before the figure, and for this reason it is claimed that the instruction was not properly excepted to. It is clear, however, that the whole of this instruction was intended to be numbered "I," and the whole of it was intended to be excepted to, and we think the court and the parties so understood it.

Other questions are presented in this case, but we do not think that it is necessary to discuss them.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.