## UNITED STATES v. BARBEAU.
### No. 2346 Cr.

United States District Court
Territory of Alaska, Third Division.
Anchorage.
Aug. 9, 1950.

J. Earl Cooper, United States Attorney, Ralph E. Moody, Assistant United States Attorney and Gerald F. McLaughlin, Assistant United States Attorney, all of Anchorage, Alaska, for plaintiff.

George B. Grigsby, Wendell P. Kay, Anchorage, Alaska, for defendant.

DIMOND, District Judge.

Paul Gunn was shot and killed by the discharge of an automatic pistol in the hands of defendant, Lilburn H. Barbeau. The bullet entered decedent's mouth and passing through his neck shattered one of his vertebrae and severed his spinal cord. At the time of the homicide, the defendant and decedent were seated in a small room in defendant's dwelling house, facing each other and approximately six feet apart. Defendant was then engaged in loading or had just completed loading his automatic pistol.

The defendant was indicted for the crime of murder in the first degree, that is, of killing "purposely, and either of deliberate and premeditated malice", section 65-4-1, Alaska Compiled Laws Annotated 1949, hereinafter referred to as A.C.L.A. At the close of the trial the Court directed the jury to find a verdict of not guilty as to the crime charged in the indictment, that

of murder in the first degree, but submitted to the jury the included crimes, namely, murder in the second degree, voluntary manslaughter and manslaughter through culpable negligence. The jury returned a verdict finding the defendant guilty of the crime of manslaughter through culpable negligence. The relevant portions of the verdict are quoted below: "We, the jury, duly selected, impaneled and sworn to try and determine the issues in the above entitled case, find the defendant not guilty of the crime of murder in the first degree as charged in the indictment herein, or of the crime of murder in the second degree, but further find the defendant guilty of the crime of manslaughter in that he did through his culpable negligence at or about the time and place stated in the indictment, kill Paul Gunn by shooting the said Paul Gunn with a pistol, the said crime of manslaughter being included in the crime charged in the indictment."

Motions for judgment of acquittal, for arrest of judgment and for a new trial were made, argued and denied. Thereupon, defendant was sentenced to be imprisoned for the term of three years. He seasonably filed notice of appeal and applied for order admitting him to bail pending appeal under Rule 46(a) (2) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., hereinafter referred to as the Rules.

The motions made on defendant's behalf, including the application for allowance of bail pending appeal, are based upon several grounds, none of which is deserving of serious attention except the one asserting that the offense for which the defendant was convicted is not necessarily included in the offense charged in the indictment and therefore the verdict and judgment are in contravention of Rule 31 (c) of the Rules, which provides: "The defendant may be found guilty of any offense necessarily included in the offense charged * * *."

No request or even suggestion was made on behalf of the defendant that the crime of manslaughter through culpable negligence was not included within the crime charged in the indictment until after verdict. During the trial, the defendant endeavored to prove and evidently did prove to the satisfaction of the jury, that the killing was accidental and not intentional. He failed to convince the jury that the accidental killing was not the result of his own culpable negligence.

There is no occasion for surprise in this result. The evidence indicated beyond reasonable dispute that Paul Gunn could not have been killed unless the defendant had, at the very least, been negligent to some degree. The pointing of an automatic pistol loaded or being loaded, toward another human being seated six feet distant, is scarcely consistent with the due care required by law. The jury simply went one step further and found the defendant's negligence to be culpable.

The defendant offered certain instructions on the subject of killing through culpable negligence in substantial harmony with the instructions given by the Court. He proposed no instructions to the effect that manslaughter by culpable negligence was not included within the crime charged in the indictment, and at all stages of the case it was assumed by both parties, as a matter of course, that manslaughter by culpable negligence was included within the crime charged in the indictment.

Sections 65-4-1, 65-4-3, 65-4-4, A.C.L.A., define, respectively, the crimes of murder in the first degree, murder in the second degree (killing purposely and maliciously), and manslaughter. Section 65-4-4 provides: "That whoever unlawfully kills another, except as provided in the last three sections, is guilty of manslaughter, and shall be imprisoned in the penitentiary not more than twenty nor less than one year."

Thereafter, in Section 65-4-8, is the following: "That every killing of a human being by the culpable negligence of another when such killing is not murder in the first or second degree or is not justifiable or excusable, shall be deemed manslaughter and shall be punished accordingly."

It is not necessary to set out the statute governing the circumstances under which a homicide may be justifiable, for no suggestion was made that the killing of Paul Gunn was justifiable under the law. Section 65-4-11, A.C.L.A., makes provision for excusable homicide, the relevant parts of which are: "that the killing of a human being is excusable when committed * * * in doing any * * * lawful act, by lawful means, with usual and ordinary caution and without any unlawful intent."

The meaning of our statutory provisions concerning manslaughter is not entirely clear. As has been noted, the law provides that the killing of a human being is excusable when committed in "doing any * * * lawful act, by lawful means, with usual and ordinary caution and without any unlawful intent." And yet, when treating of the subject of negligent homicide, the Congress provided that "every killing of a human being by the *culpable* negligence of another" under the limitations stated in Section 65-4-8, supra, shall be deemed manslaughter and shall be punished accordingly. (Emphasis supplied.)

Upon consideration of that part of our law concerning excusable homicide, Sec. 65-4-11, it would seem to have been the intent of the Congress that every involuntary killing through negligence and not excusable, should be considered unlawful and therefore criminal. But if that be the case, then the use of the word "culpable" would appear inapt or unnecessary, for that word by judicial construction has no settled, well-defined meaning.

Ballentine's Law Dictionary gives the following definition of "culpable negligence":

"Culpable negligence. The want of that usual and ordinary care and caution in the performance of an act usually and ordinarily exercised by a person under similar circumstances and conditions. See Kent v. State, 8 Okl.Cr. 188, 126 P. 1040.

"The omission to do something which a reasonable, prudent and honest man would do, or doing something which such a man would not do under all the circumstances surrounding each particular case. See State v. Emery, 78 Mo. 77, 47 Am.Rep. 92, quoting Shearman & Redfield on Negligence."

Black's Law Dictionary contains a like definition, as follows: "Culpable negligence. Failure to exercise that degree of care rendered appropriate by the particular circumstances, and which a man of ordinary prudence in the same situation and with equal experience would not have omitted. Carter v. Lumber Co., 129 N.C. 203, 39 S.E. 828; [Hot Springs] Railroad Co. v. Newman, 36 Ark. [607], 611; Woodman v. Nottingham, 49 N.H. 387, 6 Am. Rep. 526; Kimball v. Palmer [4 Cir.], 80 F. 240, 25 C.C.A. 394; [Chicago, K. & N.] Railway Co. v. Brown, 44 Kan. 384, 24 P. 497; [Atchison, T. & S. F.] Railroad Co. v. Plaskett, 47 Kan. 107, 26 P. 401; Clark v. State [27 Okl.Cr. 11], 224 P. 738, 740; State v. Pauly (Mo.Sup.) 267 S.W. 799, 801; Nail v. State [33 Okl.Cr. 100], 242 P. 270, 272."

The Criminal Court of Oklahoma in the case of Jackson v. State, 1947, 84 Okl.Cr. 138, 179 P.2d 924, a homicide case, held that culpable negligence is ordinary negligence and that was also the decision in the Florida case of Russ v. State, 1939, 140 Fla. 217, 191 So. 296, 298.

But in State v. Carter, 1938, 342 Mo. 439, 116 S.W.2d 21, the court held that culpable negligence must be negligence characterized by recklessness or wanton disregard of the rights of others, and that was the ruling in the case of Reed v. Madden, 8 Cir., 1937, 87 F.2d 846, citing with approval and quoting from the opinion in the case of State v. Melton, 1930, 326 Mo. 962, 33 S.W.2d 894, 895. While in State v. Bates, 1937, 65 S.D. 105, 271 N.W. 765, the Court went so far as to indicate that the word "culpable" involved consciousness of wrongdoing, saying that the proof must be such as to raise the possible inference of mens rea. In State v. McComb, 1925, 33 Wyo. 346, 239 P. 526, 528, 41 A.L.R. 717, a case apparently relied upon by the text-writer in 26 Am.Jur. 299, the statute construed used the words

"by any culpable neglect or criminal carelessness". The Court held the words "culpable" and "criminal" to have been used synomously, and that want of ordinary care not sufficient to sustain a charge of manslaughter. Evidently in Michigan the term "gross negligence" is used in the statute. People v. Barnes, 1914, 182 Mich. 179, 148 N.W. 400.

If the term "culpable negligence" shall be considered to mean something more, negligence of greater degree, than lack of "usual and ordinary caution", Section 65-4-11, it would seem to follow that there is a no-man's-land in the law as regards the crime of manslaughter, in that an involuntary killing may be the result of lack of "usual and ordinary caution"—that is to say, the result of ordinary negligence,— and yet not be "culpable negligence" with its possible implication of wanton and reckless disregard of the rights or safety, or even the life, of another. Barring legislative mischance, it is scarcely to be conceived that the enacting authority should leave such a vacuum in the law on the subject, because that condition of the law, if existing, really means that a killing may be excusable although resulting from failure to observe "usual and ordinary caution" if that failure does not amount to "culpable negligence." Had the Congress intended that result, then the question may be asked why the law does not specifically provide that killings are excusable when committed in the doing of any lawful act by lawful means except in cases where the homicide is the result of culpable negligence.

While, as above indicated, courts have not agreed on the subject, the instructions in this case were based upon the theory that culpable negligence means negligence so gross and wanton as to imply a reckless disregard for human safety or human life, and that such negligence goes beyond the degree of negligence—ordinary negligence—which would justify the maintenance of a civil action. Accordingly, the defendant in this case was given the benefit of that construction of the law which most strongly operated in his favor even though in so doing, the Court by judicial fiat may have expanded the statute with respect to excusable homicide.

Alaska is not the only jurisdiction in which the phrases "due caution" and "culpable negligence" are used in separate sections of the homicide law without any manifestly clear indication of their relation to each other. In the laws of Oregon, Section 23-406, O.C.L.A., we find the following: "If any person shall, in the commission of an unlawful act, or a lawful act *without due caution or circumspection,* involuntarily kill another, such person shall be deemed guilty of manslaughter." (Emphasis supplied.)

And in Section 23-410, O.C.L.A., provision is made for negligent homicide in the following language: "Every other killing of a human being by act, procurement, *or culpable negligence* of another, when such killing is not murder in the first or second degree, or is not justifiable or excusable as provided in this chapter, shall be deemed manslaughter." (Emphasis supplied.)

The Oregon law on the subject was amended by the Legislature of that State in 1941, Chapter 439, to make special provision for negligent homicide in the operation of motor cars, Section 23-410a, but otherwise Sections 23-405 and 23-410 are unchanged. The statutes of Oregon are referred to because most of our procedural law and our criminal code as well, were taken bodily from the laws of Oregon and because the Oregon case hereinafter cited has a special bearing upon the problem now confronting us.

The defendant contends that since, with respect to murder in the first degree, the necessary charge is that the killing is voluntary, manslaughter through culpable negligence contains an element not included in first degree murder, to wit, negligence. It is obvious that the killing of a human being by the culpable negligence of another under Alaska Law, as set forth in Section 65-4-8 above quoted, is a species of manslaughter, and nothing else. The law so declares it. It is equally plain that the gist and essence of the of-

fense of manslaughter lies in the unlawfulness of the killing, whether voluntary or involuntary. It cannot rightly be said that negligence is an essential element of the crime necessary to be charged in the indictment, the only necessary, indispensable element being that the killing is unlawful. A negligent killing is merely one kind of unlawful killing. The question of negligence is subordinate to the main issue; it merely defines the type and is a matter of detail. Nothing to the contrary appears in the case of Giles v. United States, 9 Cir., 144 F.2d 860, 861, in which the rule on the subject is quoted as follows: "To be necessarily included in the greater offense the lesser must be such that it is impossible to commit the greater without first having committed the lesser."

In the instant case, the greater offense with which the defendant was charged was murder in the first degree involving a killing done purposely and of deliberate and premeditated malice. Under both types or species of the crime of manslaughter, it is required only that the killing be unlawful. Even in Sec. 65-4-4, supra, which embraces voluntary manslaughter, there is no statutory requirement of purpose or intent; and, of course, under Sec. 65-4-8, supra, dealing with negligent homicide, it is assumed that purpose or intent to kill are absent. Hence, it logically follows that every essential element of manslaughter by negligent homicide is necessarily included in the offense of murder in the first degree charged in the indictment.

Under the common law, murder is the unlawful killing of a human being with malice aforethought. Commonwealth v. Webster, 5 Cush., Mass., 295, 52 Am.Dec. 711. That definition of murder is substantially the equivalent of that found in our statute quoted above. It is obvious that an indictment at common law would necessarily include manslaughter because manslaughter is an unlawful killing although there may have been no "malice aforethought". Hence, under common law, under our own local statute and under the Rules, any unlawful killing must necessarily be included in a charge of murder in the first degree because that is a charge which has as its one indispensable element an unlawful killing. Nearly all of the courts having had occasion to deal with the subject have held that an indictment for first degree murder is sufficient to embrace involuntary manslaughter. That is and has been the rule in California. Virtually all of the arguments presented by the defendant in this case have been met and considered and fully answered by the Supreme Court of California, speaking through Justice Garoutte in the case of People v. Pearne, 1897, 118 Cal. 154, 50 P. 376, 377, from which an excerpt is quoted: "Yet it has always been held that upon an indictment charging murder a conviction for manslaughter was proper. In other words, when an indictment charges murder it also charges manslaughter. An indictment laid for murder charges an intentional killing, yet under the criminal practice and procedure in this state there is no doubt but that a verdict of involuntary manslaughter would find support in such a pleading. This is so because involuntary manslaughter is the 'unlawful killing of a human being,' and such crime is always included in an indictment for murder."

In view of the similarity existing between our statutory provisions and those of Oregon with respect to homicide, attention may properly be invited to the case of State v. Nortin, 1943, 170 Or. 296, 133 P. 2d 252, 253, in which the Court says:

"We will first consider whether there was substantial evidence to support the verdict. The court fully instructed the jury on the law of murder in the first degree, murder in the second degree, and voluntary and involuntary manslaughter. The jury found the defendant 'guilty of manslaughter' without specifying whether voluntary or involuntary. This general form of verdict was proper if supported by evidence of either voluntary or involuntary manslaughter. State v. Setsor, 61 Or. 90, 119 P. 346.

"The statute provides: 'In all cases, the defendant may be found guilty of any

crime, the commission of which is necessarily included in that with which he is charged in the indictment, or of an attempt to commit such crime.' O.C.L.A. § 26-948.

"Under this statute, all degrees of homicide, including voluntary and involuntary manslaughter, are in the eyes of the law included in the charge of murder in the first degree. State v. Ellsworth, 30 Or. 145, 47 P. 199; State v. Setsor, supra; State v. Farnam, 82 Or. 211, 161 P. 417, Ann.Cas. 1918A, 318. If there was substantial evidence of murder in any degree followed by a verdict of guilty of manslaughter the defendant cannot complain of the denial of his motion for a directed verdict."

In Pennsylvania, it apparently has been held that a defendant charged with murder could not be convicted of negligent manslaughter but that decision was arrived at by reason of the Pennsylvania law providing that involuntary manslaughter is a misdemeanor and in that State the person charged with felony may not be convicted of a misdemeanor, and acquittal of the felony does not bar prosecution for the misdemeanor, Hilands v. Commonwealth, 1886, 114 Pa. 372, 6 A. 267.

At common law, one accused of felony might not be convicted of an included misdemeanor, the reason being that a person charged with a misdemeanor was entitled to certain privileges barred to one accused of felony, Watson v. State, 1902, 116 Ga. 607, 43 S.E. 32, 21 L.R.A., N.S., 1. In the Pearne case, supra, reference is made to the case of Bruner v. State, 58 Ind. 159, as opposing the views the Supreme Court of California announced by Justice Garoutte. It is deserving of note that in the later case of Pigg v. State, 1896, 145 Ind. 560, 43 N.E. 309, 312, the Supreme Court of Indiana holds to the prevailing doctrine, as indicated by the following excerpt from that Court's opinion: "By section 1904, Rev.St. 1894 (section 1835, Rev.St. 1881) it is provided that 'the defendant may be found guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment or information.' Now, the commission of manslaughter, as defined in section 1981, Rev. St. 1894 (section 1908, Rev. St. 1881), is plainly included in that of murder in the first degree, as that crime is defined in section 1977, Rev. St. 1894 (section 1904, Rev. St. 1881). The essential element of manslaughter, as appears in the definition, is an unlawful killing. That element of crime is certainly included in the charge of murder in either degree. The unlawful killing may be either voluntary, upon a sudden heat, or it may be involuntary, and in the commission of some unlawful act. In either case, however, it is an unlawful killing; and the offense, as such, is included in the greater charge of murder."

The defendant's present theory of the law finds no support in the Sixth Amendment, providing that "the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation." The indictment charged that the defendant " * * * killed Paul Gunn by shooting the said Paul Gunn with a pistol." That information was so circumstantial and complete that the defendant, although represented by two able and experienced counsel of his own choosing, made no request or demand for a bill of particulars or in any other manner asked to be further "informed of the nature and cause of the accusation." In fact, defendant through his counsel proposed to the Court instructions to the jury of the precise nature given and upon the very issue of which he now complains. The charge of the indictment that the defendant "killed Paul Gunn by shooting the said Paul Gunn with a pistol" is explicit. The indictment further charged that the killing was unlawful, not that the word "unlawful" was used in the indictment, but because that averment was necessarily included in the crime charged. The jury found the defendant guilty of an unlawful killing, and the law says an unlawful killing, without more, is manslaughter. So the requirements of the Sixth Amendment were fully met.

The decision arrived at is, moreover, in harmony with the basic intent and purpose

of all law in doing justice under law and in avoiding the multiplicity of pleadings and trials and proceedings which often defeat justice. The adoption of Federal Rules of both Civil and Criminal Procedure have done much to promote the administration of justice under law, without the pretentious, circumlocutory rigamarole which served often to defeat justice and seldom to promote it.

■■■ The question here directly involved has been determined in other jurisdictions but it has never been definitely passed upon by the Court of Appeals for the Ninth Circuit or by the Supreme Court. It is desirable that the law be settled. Under the provisions of Rule 46, bail may be allowed pending appeal "only if it appears that the case involves a substantial question which should be determined by the appellate court". Is the question here involved a "substantial" one? Light is afforded by the history of a similar application for bail pending appeal in the case of Iva Ikuko D'Aquino (Tokyo Rose) v. United States, 9 Cir., 180 F.2d 271. After denial of bail by the District Judge and by the Court of Appeals, Justice Douglas ordered that the appellant be admitted to bail, saying that if the question involved is "fairly debatable" it is "substantial". That the question involved in the present case is debatable is, perhaps, indicated by the earnestness of the debate upon it in this Court upon the motions. Having in view the duty of the Court to amply protect the rights of those accused, and even convicted, of crime, the decision as to whether the case is "fairly" debatable may be left to the decision of the Court of Appeals.

Pending appeal, bail has been set at $10,-000.00.

On request for instructions—granted.

On motions for judgment of acquittal, for arrest of judgment and for new trial—denied.

On motion for bail pending appeal—granted.